UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| VIANTKA JOHNSON, o/b/o B.K.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 4:12-CV-2834-RDP |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF DECISION

Viantka Johnson ("Plaintiff") brings this action on behalf of her son ("B.K.S."), pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Children's Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for SSI on behalf of B.K.S. on August 10, 2009 in which she alleged that disability began on July 13, 2009. (Tr. 98-101). Plaintiff's application was initially denied by the Social Security Administration on November 4, 2009. (Tr. 65-68). Plaintiff then requested and received a hearing before Administrative Law Judge Michael L. Levinson ("ALJ") on December 14, 2010. (Tr. 73-74). The ALJ reached his decision on December 18, 2010, and determined that B.K.S. had not been under a disability within the meaning of Section 1614(a)(3)(C) of the Act since August 19, 2009, the date the application was

filed. (Tr. 58-62). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

B.K.S. was five years old at the time of the hearing. (Tr. 9). Plaintiff alleges that B.K.S. has been disabled since July 13, 2009 because of asthma. (Tr. 98). Additionally, Plaintiff alleges in a letter brief filed with this court on February 5, 2013, that B.K.S. has also suffered from allergies and sleep apnea since his birth. (Pl.'s Brief 1).

B.K.S. interviewed with the agency field office on August 10, 2009. (Tr. 126-29). The interviewer noted that B.K.S. had no difficulty breathing or talking. (Tr. 127-28). The interviewer went on to note that B.K.S. had no problems with hearing, reading, breathing, understanding, coherency, concentrating, talking, sitting, standing, walking, seeing, using hands, or writing. (Tr. 128). State agency physician Dr. Robert Heilpern issued a Childhood Disability Evaluation Form on November 4, 2009. (Tr. 190-95). Dr. Heilpern reviewed B.K.S.'s medical records and determined that he had "mild persistent asthma" which was not a "severe" impairment. (Tr. 190). Dr. Heilpern found that the allegations of B.K.S.'s frequent asthma attacks were not credible and that his condition was under control. (Tr. 190).

B.K.S. has been diagnosed with asthma several times during his alleged disability onset date. (Tr. 180-81, 204-05, 212). However prior to his onset date, Plaintiff had sought treatment for B.K.S.'s asthma related illnesses. On January 19, 2009, six-months prior to his alleged onset date of disability, B.K.S. was admitted to St. Vincent's Hospital East with his chief complaint listed as asthma. (Tr. 153). The attending physician conducted a respiratory exam which showed normal breathing sounds, but also some wheezing. (Tr. 155). The physician noted under the clinical impression part of B.K.S.'s chart that he had a "bronchospasm," and declined to consider

B.K.S.'s condition an acute exacerbation of asthma under the Clinical Impression portion of the treatment note. (Tr. 155). Furthermore, B.K.S.'s chest x-ray that same day showed clear lungs and normal lung volumes. (Tr. 62, 159). His medical records also document numerous visits to the Jefferson County Department of Health ("JCDH") prior to his disability onset date: February 25, 2008 complaining of vomiting (Tr. 186-87); August 1, 2008 for a routine physical examination (Tr. 184-85); October 30, 2008 complaining of coughing, fever, and wheezing (attending physician assessed B.K.S. with mild persistent asthma questioning the exacerbation due to no wheezing during the exam) (Tr. 183-84); February 17, 2009 for vomiting and diarrhea (Tr. 182-83); and April 14, 2009 for fever, cough and headache (Tr. 181-82). B.K.S. was diagnosed with acute asthma exacerbation on two of these prior visits (Tr. 182, 187) while the rest of the visits mentioned Plaintiff's history and diagnosis of mild persistent asthma. (Tr. 182-83, 183-84, 184-85).

B.K.S. was diagnosed at the JCDH several times after his alleged onset date of disability. (Tr. 180, 201-05). Plaintiff sought treatment for him from Dr. Harmon at the JCDH on July 17, 2009 for complaints of a sore throat, vomiting, and a fever. (Tr. 180). Plaintiff did not report any asthma-related symptoms. (Tr. 180). Dr. Harmon noted that B.K.S.'s lungs were clear, observed no inspiratory retraction, and did not hear any wheezing. (Tr. 180). He noted that B.K.S had dyspnea when running long distances and diagnosed him with "mild persistent asthma." (Tr. 180).

Plaintiff sought treatment from Dr. Harmon again for B.K.S. four months later on November 18, 2009 complaining of coughing and a sore chest. (Tr. 204-05). Dr. Harmon noted that B.K.S.'s reported history was "mild persistent asthma." (Tr. 205). Upon physical

examination, Dr. Harmon found no wheezing, no inspiratory retraction, and clear lungs. (Tr. 205). Dr. Harmon diagnosed B.K.S. with asthma with acute exacerbation. (Tr. 205).

Four months later, on March 8, 2010, Plaintiff returned to JCDH reporting B.K.S. was coughing and wheezing. (Tr. 203). Dr. Balas found no acute distress, and an exam of B.K.S.'s lungs showed only "mild" wheezing, good air exchange, no inspiratory retraction, and clear lungs. (Tr. 203-04). Dr. Balas also noted that Plaintiff had not refilled B.K.S.'s medications since his last visit and Dr. Balas stressed that Plaintiff should comply with recommended follow-ups and refill B.K.S.'s medicines every month. (Tr. 204).

Plaintiff returned to JCDH later that month on March 26, 2010 complaining of B.K.S.'s sore throat and fever. (Tr. 202-03). The medical examiner, Dr. Rosemary Faust, noted that B.K.S.'s upper airway and lungs were normal, but did not mention his asthma. Plaintiff returned on May 27, 2010 reporting B.K.S. was experiencing non-asthma-related symptoms including fever, sore throat, and headache. (Tr. 201). B.K.S.'s airway was normal and his lung exam was essentially normal. (Tr. 201). His diagnosis included asthma, but the suggested treatment was to "treat symptoms us[ing] inhaler once home." (Tr. 202).

Plaintiff twice sought treatment for B.K.S. for asthma related symptoms from Children's Health System Emergency Department. On September 16, 2010, Plaintiff was admitted to the emergency department for cough and congestion. (Tr. 213-16). B.K.S. had normal, non-labored respirations, normal breath sounds, and a chest wall not tender to palpitation, and his diagnoses included cough, congestion, and rhinorrhea. (Tr. 215). Further, B.K.S. did not meet the criteria for an emergency medical condition, as the emergency triage decision was "Green-Non Urgent." (Tr. 215).

B.K.S. was again admitted to Children's Health System Emergency Department on October 13, 2010. (Tr. 209). He was pain-free, had clear breathing sounds, and had "[n]o increased work of breathing." (Tr. 209). His respiratory assessment indicated no acute respiratory distress, a normal respiratory rate, no stridor, normal respiratory effort, and non-labored respirations. (Tr. 209). However, it did show "scattered expiratory wheezing." (Tr. 210). B.K.S. was diagnosed with asthma exacerbation and was released in stable condition. (Tr. 212). The medical examiner again noted B.K.S.'s condition did not meet the criteria for an emergency medical condition. (Tr. 212).

Plaintiff submitted additional evidence to this court on March 15, 2013, and also attached to his complaint and February 5, 2013 letter brief, prescription forms, emergency room discharge instructions, releases to return to school, and doctor appointment forms. (*See* Docs. #1, 12-1, 14).

## II.   ALJ's Decision

For a child to be determined disabled as defined under the Act, the child must "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Social Security regulations provide a three-step test for determining whether a child is disabled. 20 C.F.R. § 416.924(a); *see e.g. Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F. Supp. 2d 1239, 1241 (N.D. Ala. 2006). First, the ALJ must determine whether the child is engaging in substantial gainful activity. "Substantial gainful

activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the child engages in substantial gainful activity, then the child cannot claim disability regardless of the child's medical condition. 20 C.F.R. § 416.924(b). If the child is found to not be engaging in substantial gainful activity, the analysis proceeds to step two.

In the second step, the ALJ must determine whether the child has a medically determinable impairment or combination of medical impairments that is "severe" under the Act. 20 C.F.R. § 416.924(c). At this stage of the analysis, "severe" as understood under Social Security Regulations requires that the child have a medically determinable impairment, or combination of impairments, that is not merely a slight abnormality that causes no more than minimal functional limitations. *Id*. Absent such a "severe" impairment, the child may not claim disability. *Id*. If the child does have a severe impairment (or combination of medical impairments that are severe), the analysis proceeds to step three.

Third, the ALJ must determine whether the child's impairment meets or medically equals an impairment included in the Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). 20 C.F.R. § 416.924(d). If the child's impairment meets a Listing, the child is declared disabled. *Id*. Alternatively, the child may also be declared disabled if the child's impairment or combination of impairments functionally equals a Listing. *Id*. In determining whether the child's impairment or combination of impairments functionally meets a Listing, the ALJ must consider the child's functional capacity with regard to six domains.[1] 20 C.F.R. § 416.926a. To functionally equal a Listing, the child's impairment or combination of impairments must result in "marked" limitations in two of the domains or an "extreme" limitation in one

---

[1] A domain is a broad area of functioning. The six domains considered in determining whether a child's impairment functionally equals a Listing are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(vi).

domain. 20 C.F.R. 416 § 926a(d). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme" and is equivalent to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*. An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A finding of "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*. In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. 416.926a(a). The ALJ must consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain. 20 C.F.R. 416.926a(c).

Applying this analysis in the instant case, the ALJ determined that B.K.S. has not engaged in substantial gainful activity. (Tr. 62). However, the ALJ also determined that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment under 20 C.F.R. §§ 416.924(c) and 416.929(b). (Tr. 62). The ALJ then concluded that B.K.S. had not been disabled, as defined in the Act, since July 31, 2009, the date his applications were filed. (Tr. 62).

### III. Plaintiff's Argument for Reversal

Although Plaintiff did not file a formal Memorandum in Support of Reversal of the Commissioner's decision outlining her arguments, she nonetheless requested a court review by submitting her February 5, 2013 letter brief. (Pl. Brief 1). Plaintiff writes:

> "I am writing this statement on behalf of my son [B.K.S.] stating that I think he does meet the requirements for disability because he has had asthma, allergies, and sleep apnea since birth. I have been struggling to get him to all of his doctor[']s appointments, he has had to go to the E.R. many times, he has many prescriptions, and just recently had to be admitted to the special care unit at Children's Hospital for an asthma attack for 5 days. He has had 2 appointments for the asthma clinic after he was discharged from the hospital and he still has one coming Feb 21, 2013. Enclosed with this statement [are] records of doctor visits an[d] prescriptions."

(Pl. Brief 1). Plaintiff enclosed additional medical, school, and prescription records. From this short statement, this court understands that Plaintiff's argument for reversal is the ALJ did not base his findings on substantial evidence, and that the additional evidence is new and material and warrants a remand.

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); see also *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the

Commissioner's findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are review *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

**V.     Discussion**

After careful review, the court concludes for the reasons stated below that substantial evidence supports the ALJ's findings and that the ALJ correctly applied the law.

**A.     Plaintiff's New Evidence Proffer**

First, the court addresses Plaintiff's contention that this case should be reversed and remanded due to new and material evidence presented to this court. The Eleventh Circuit has held that in order to warrant remand for consideration of new evidence, a plaintiff must establish (1) that new, non-cumulative evidence exists; (2) that the evidence is material (*i.e.*, relevant and probative so that a reasonable possibility exists that it would change the administrative result); and (3) that good cause exists for the failure to incorporate the evidence into the record in the ALJ's proceedings. *See, e.g.*, *Archer v. Comm'r of Soc. Sec.*, 176 Fed. Appx. 80, 82-83 (11th Cir. 2006) (per curiam); *Magill v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 92, 95-96 (11th Cir. 2005) (per curiam); *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218-19 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323-24.

Plaintiff attached the following evidence to the complaint: (1) prescription forms dated January 29, 2011, and signed by Dr. Kimberly Grant at Children's Health System Emergency Department (Doc. #1 at 8); (2) an emergency room discharge instruction showing Plaintiff was diagnosed with status asthmaticus and pediatric viral syndrome on January 29, 2011 (Doc. #1 at 11); (3) medication reconciliation forms showing which medications B.K.S. was taking prior to

his emergency room visits on January 29, 2011 and February 9, 2011, and which medications he received in the emergency room on those dates (Doc. #1 at 11-13); (4) St. Vincent's St. Clair Emergency Department discharge instructions from August 19, 2011 (for fever), September 9, 2011 (for fever), April 23, 2012 (for fever), July 11, 2012 (for a wound), and August 24, 2012 (for an unspecified reason) (Doc. #1 at 5-6, 9, 16-17); (5) a home safety checklist (Doc. #1 at 15); and (6) an illegibly dated rental equipment form for liquid oxygen and accessories (Doc. #1 at 14).

In addition, Plaintiff attached the following evidence to the February 5, 2013 letter brief: (1) a release to return to school form allowing B.K.S. to return to school one week after a five-day hospitalization due to asthma from August 26-30, 2012, an Asthma Discharge Action Plan, and record of medications he was given on August 26, 2012 (Doc. #9 at 7-9, 14); (2) two release forms to return to school after appointments at the Children's Hospital of Alabama on September 20, 2012, for an unspecified reason, and October 10, 2012, for an ENT appointment (the October 2012 release allowed B.K.S. to return to school the next day with "regular activity/no restrictions" and the September 2012 release did not show that B.K.S.'s activities were limited (Doc. #9 at 4, 10-11); (3) a record of a possible outpatient surgery on November 14, 2012 (Doc. #9 at 12); (4) prescription records from B.K.S.'s visit to Children's Hospital of Alabama on December 12, 2012, and a release stating he could return to school the next day with no activity restrictions (Doc. #9 at 3, 22-29); (5) a record from December 2012 showing B.K.S. had doctor appointments scheduled for December 13, 2012, February 21, 2013, and April 11, 2013 (Doc. #9 at 2); (6) an undated Asthma Action Plan (Doc. #9 at 21); and (7) records of B.K.S.'s scheduled and rescheduled appointments in October and December 2012 (Doc. #9 at 5-6). Plaintiff filed another letter brief on February 26, 2013 which appears to be the same as the February 5, 2013,

letter brief, except for hand-written notations to Plaintiff's phone number and address (Doc. No 11 at 1). Plaintiff did not attach any additional evidence to the February 26, 2013 letter brief.

On March 15, 2013 this court received additional evidence from Plaintiff (Doc. #14) which included: (1) an undated asthma action plan listing B.K.S's medications (Doc. #14 at 1); (2) Pell City School System notice and consent for evaluation form dated January 30, 2013 (Doc. #14 at 2); (3) 2012-2013 school year report card for 3rd 9 week averages (Doc. #14 at 3); (4) illegibly dated rental equipment form for liquid oxygen and accessories (Doc. #14 at 4); (5) letter requesting parent consent to get B.K.S.'s vision and hearing checked dated January 29, 2013 (Doc. #14 at 5); (6) prescription records from B.K.S.'s visit to Children's Hospital of Alabama on February 21, 2013 and a release stating he could return to school the next day with no activity restrictions (Doc. #14 at 6-15); (7) two copies of prescription records from Children's Health System Emergency Department dated January 29, 2011 (Doc. #14 at 16, 53); (8) two copies of a record from October 1, 2012 showing B.K.S. had a doctor's appointment scheduled for December 3, 2012 (Doc. #14 at 17, 52); (9) three releases allowing B.K.S. to return to school with no activity restrictions dated September 21, 2012, October 10, 2012, and December 13, 2012 (Doc. #14 at 18-19, 21, 54); (10) two copies of a release to return to school form allowing B.K.S. to return to school one week after a five-day hospitalization due to asthma from August 26-30, 2012 (Doc. #14 at 20, 43); (11) two copies of a release to return to school form allowing B.K.S. to return to school one week after a one day surgery on November 14, 2012 stating "No PE for two weeks" (Doc. #14 at 22, 42); (12) an Alabama Medicaid Referral Form dated October 2, 2012 (Doc. #14 at 23); (13) two lists of B.K.S.'s scheduled appointments on October 25, 2012, December 3, 2012, December 13, 2012, and February 21, 2013 (Doc. #14 at 23-24); (14) hospital records from B.K.S.'s five day stay at Children's Hospital of Alabama dated August 26,

2012 through August 30, 2012 (Doc. #14 at 25-38); (15) a Children's Hospital Emergency Department medications list dated February 9, 2011 (Doc. #14 at 39); (16) an asthma discharge action plan dated August 30, 2012 (Doc. #14 at 41); (17) medications reconciliation list and discharge instructions dated January 29, 2011 from Children's Health System (Doc. #14 at 44-46); (18) Jefferson Health System pharmacy records (Doc. #14 at 47-51); and (19) an orders summary record dated August 26, 2012 from Children's Health Systems (Doc. #14 at 55).

The court will begin by addressing the good cause element. The Commissioner does not dispute that there is good cause for Plaintiff's failure to submit the additional records dated after January 12, 2011 because those records did not exist when Plaintiff requested review of the ALJ's hearing decision, and therefore could not have been submitted to the Appeals Council. *See Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir.1985) ("Good cause for failing to present evidence earlier may exist where, as here, the evidence did not exist at the time of the administrative proceeding.") All of the additional records offered by Plaintiff relate to the period January 29, 2011 through April 11, 2013. Therefore, the court finds there is good cause for Plaintiff not submitting the records in question.

As for the materiality of this new evidence, all records that Plaintiff submitted relate to the period January 29, 2011 through April 11, 2013. Thus, these records are irrelevant to the period that the ALJ had under consideration in reaching his December 18, 2010 decision. (Tr. 62). *See* 20 C.F.R. § 416.1470(b); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261. Even if this court were to find that the additional evidence documents a worsening in B.K.S.'s condition, this would still not be relevant to the ALJ's December 18, 2010 decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily

prior to the date of the ALJ's decision."); *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition.").

**B.     The ALJ's Decision**

The court's review of the ALJ's decision is limited to whether his decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221. For the reasons explained below, the court finds that the ALJ correctly applied the appropriate legal standards and that the ALJ's decision is supported by substantial evidence. Here, the ALJ determined B.K.S. had not engaged in substantial gainful activity, and that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment under 20 C.F.R. §§ 416.924(c) and 416.929(b). (Tr. 62). The ALJ then concluded that B.K.S. had not been disabled, as defined in the Act, since July 31, 2009, the date his applications were filed. (Tr. 62).

After careful evaluation of the record, the court concludes that the ALJ properly determined that: (1) B.K.S. has not engaged in substantial gainful activity since July 31, 2009, the date he applied for SSI; and (2) B.K.S. had no medically determinable impairment. (Tr. 62). Thus, the ALJ found that B.K.S. was not disabled. (Tr. 62). The ALJ found no medical signs or laboratory findings to substantiate that B.K.S. had a medically determinable impairment. (Tr. 62). *See* Social Security Ruling (SSR) 96-5, 1996 WL 374187 at *1 (1996) (the existence of a medically determinable physical or mental impairment must be established by objective medical abnormalities, *i.e.*, medical signs and laboratory findings). The ALJ specifically pointed out that B.K.S.'s x-rays of his chest and lungs, dated January 9, 2009, were normal. (Tr. 62, 159). *See*

Social Security Ruling (SSR) 96-5, 1996 WL 374187 at *1 (1996) (where there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment, the individual must be found not disabled).

Even assuming the ALJ should have found that B.K.S. had a medically determinable impairment (and, to be clear, the record evidence supports his finding that B.K.S. did not), the record shows B.K.S. has no impairment rising to the level of a "severe" impairment. An impairment is not "severe" if it is a slight abnormality or combination of slight abnormalities that cause no more than minimal limitations. *See* 20 C.F.R. 416.924(c); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); SSR 85-28, 1985 WL 56856 at *2 (1985). Plaintiff bears the initial burden of demonstrating that B.K.S.'s impairments are "severe." *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

B.K.S. has been diagnosed with asthma several times, but the Eleventh Circuit has recognized that "the mere existence of impairments does not reveal the extent to which they limit [his] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). It is the functional limitations that may result from a claimant's impairments, not the impairments themselves, which affect his ability to work. *See* 20 C.F.R. § 416.945(a); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (a mere diagnosis says nothing about the severity of the impairment); *McCruter v. Brown*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

The medical record provides substantial evidence to show that B.K.S.'s asthma did not cause the required functional limitations. B.K.S.'s respiratory exam on January 19, 2009 showed

normal breathing sounds, but also some wheezing. (Tr. 155). An x-ray done on that same day showed clear lungs and normal lung volumes. (Tr. 62, 159). B.K.S. sought asthma-related treatment from Children's Health System Emergency Department on October 13, 2010. However, the emergency triage was marked "green-non urgent" and the records noted that he was pain-free, had clear breathing sounds, and had "[n]o increased work of breathing." (Tr. 209). The medical examiner also noted that B.K.S.'s condition did not meet the criteria for an emergency medical condition. (Tr. 212).

B.K.S. saw Dr. Harmon at JCDH on July 16, 2009 complaining of a sore throat, vomiting, and fever. (Tr. 180). Dr. Harmon noted that B.K.S.'s lungs were clear, he observed no inspiratory retraction, and did not hear any wheezing. (Tr. 180). He diagnosed B.K.S. with "mild persistent asthma" and noted that B.K.S. had dyspnea when running long distances. (Tr. 180). Four months later, B.K.S. returned to Dr. Harmon, whose physical findings again showed no signs of wheezing, inspiratory retraction, and clear lungs. (Tr. 205). B.K.S. sought treatment twice in March, but medical personnel found no acute distress, and B.K.S.'s lungs showed only "mild" wheezing, good air exchange, clear and normal lungs, and no inspiratory retraction. (Tr. 202-04). B.K.S. had another examination on May 27, 2010 at JCDH which found his airways were normal and his lungs were essentially normal. (Tr. 201). The repetition of B.K.S.'s lung examinations coming back clear and normal provides substantial evidence to support the ALJ's decision.

B.K.S. was also interviewed by the agency field office on August 10, 2009. The interviewer noted that B.K.S. had no trouble hearing, reading, breathing, understanding, coherency, concentrating, talking, sitting, standing, walking, seeing, using hands, or writing. (Tr. 127-28). State agency physician Dr. Robert Heilpern issued a Childhood Disability Evaluation

Form on November 4, 2009 after reviewing B.K.S.'s medical records, and he determined that B.K.S. had "mild persistent asthma" which was not a "severe" impairment. (Tr. 190). State agency consultants are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if their opinions are supported by, and consistent with, the evidence of record. *See* 20 C.F.R § 416.927(e)(2)(i); SSR 96-6p; 1996 WL 374180 at *2 (1996). Both the interviewer and Dr. Heilpern's opinions are supported by the record and provide substantial evidence in support of the ALJ's decision.

B.K.S.'s asthma did not rise to the level of a "severe" impairment. If B.K.S. has no medically determinable impairment or his impairment results in slight abnormalities that cause no more than minimal functional limitations, there is no "severe" impairment and he is not disabled. *See* 20 C.F.R. § 416.924(c). Even assuming the ALJ erred by finding B.K.S.'s asthma is not a medically determinable "severe" impairment (and, to be clear, the ALJ did not), any error is harmless because B.K.S.'s asthma does not meet or functionally equal a Listing and thus, he is still not disabled. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ error was harmless where correcting the error would not change the ALJ's decision); *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise."); *see also*, *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); and *Higgs v. Bowen*, 880 F.2d 860, 861 (6th Cir. 1988).

## VI. Conclusion

The court concludes that the ALJ's determination that B.K.S. is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.

The Commissioner's final decision is therefore due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

      **DONE** and **ORDERED** this February 24, 2014.

                                                  **R. DAVID PROCTOR**
                                                  UNITED STATES DISTRICT JUDGE